UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-26-FDW

| | |
|---|---|
| SURRELL DUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| CHRIS POTTER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by all Defendants, (Doc. No. 21), and on a Motion to Dismiss by pro se Plaintiff Surrell Duff, (Doc. No. 28).

I.     **BACKGROUND**

A.     Procedural Background

Pro se Plaintiff Surrell Duff, a federal inmate currently incarcerated at Coleman U.S. Penitentiary II, in Coleman, Florida, filed this action on February 2, 2015, pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and deliberate indifference to serious medical needs against Defendants based on an incident that occurred while Plaintiff was a pre-trial detainee at the Buncombe County Detention Center in Asheville, North Carolina. (Doc. No. 1). Plaintiff has named as Defendants Chris Potter, Robert Mangum, William Baxter, and FNU Schindler, all identified as correctional officers with the Buncombe County Detention Center. On April 30, 2015, this Court held that Plaintiff's action survived a frivolity review. (Doc. No. 11). On March 11, 2016, Defendants filed the pending summary judgment motion. (Doc. No. 21). On

1

March 18, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 25). Plaintiff filed a brief opposing the summary judgment motion on March 4, 2016.[1] (Doc No. 27). On the same day, Plaintiff filed his own "Motion to Dismiss," in which he asks the Court to "dismiss" Defendants' summary judgment motion. (Doc. No. 28 at 1).

    B.    Factual Background

    1.    The Summary Judgment Evidence

    a.    Plaintiff's Allegations

Plaintiff alleged the following facts in his Complaint:

> On March 13, 2012, at approximately 5 am three officers, "Chris Potter," "Robert Mangum," "William Baxter," approached the holding cell where plaintiff was being held and ask[ed] plaintiff to remove the tissue from the window. Plaintiff stated that he would remove it only if the officers promised not to block the window with the magnet cover again. The officer then stated, "so you want to be an ass hole." A minute or two later the door was opened and the officers came in and instructed plaintiff to turn around and put his hands on the wall. Plaintiff turned around and placed his hands on the wall then he felt a heavy blow to the back of his head knocking him to the ground where he was further kicked in the face and ribs by the officers repeatedly, then stumped in his back and head knocking Plaintiff unconscious. After awaking in a pool of his own blood Plaintiff noticed that he was hog tied, also in pain and bleeding from the mouth and head. Plaintiff is not sure which officers did what because he was attacked from behind and while laying face first on the ground. But Plaintiff does know he was being attacked by the three defendants, and none of the officers tried to prevent the attack. . . . .
> After [Plaintiff] woke up from the attack, he was greeted by sergeant Schindler and a nurse named Mellissa. The nurse looked at plaintiff and said he's going to need stitches and some x-rays. Sergeant Schindler replied, "he looks fine just put a band-aid on him and let's go, and get someone in here to clean this blood up." And they exited the cell.

---

[1] As the Court discusses, infra, Plaintiff's brief was not accompanied by any sworn affidavits, or any other type of evidence that would be admissible on summary judgment.

(Doc. No. 1 at 4). Plaintiff alleged that as a result of the alleged excessive force by Defendants Potter, Mangum, and Baxter, and as a result of Defendant Schindler's refusal to allow Plaintiff to be treated for his injuries, Plaintiff "received a concussion, disfigurement of the face over his left eye. Has been diagnosed with a nerve dysfunction called STIATIC which causes problems with every day task[s] like walking, standing, sleeping, laughing, coughing or sneezing. Plaintiff has to take large amounts of strong medicine to bear the pain sometimes and has been told that the damage to the main nerve traveling down his legs from the spinal cord may get worse before it gets better and then still the pain can keep coming back." (Id.).

      b.      Defendants' Summary Judgment Materials

In support of the summary judgment motion, Defendants have submitted Plaintiff's medical records following the incident; the affidavit of Anthony Gould, who is a lieutenant with the Buncombe County Sheriff's Office; and the affidavits of Defendants Christopher Potter, Robert Mangum, Thomas Schindler, and William Baxter—the four officers who allegedly violated Plaintiff's constitutional rights. Defendants' evidence on summary judgment shows that Plaintiff was booked into the Buncombe County Detention Center on March 12, 2012, and he was released into the custody of the U.S. Marshals on March 23, 2012. (Doc. No. 21-4 at ¶ 4: Anthony Gould Aff.). Thus, Plaintiff was at the Buncombe County Detention Center for eleven days. On March 13, 2012, Plaintiff put tissue paper over the window in his cell, in violation of jail policy. (Doc. No. 21-1 at ¶ 4: Christopher Potter Aff.; Doc. No. 21-2 at ¶ 3: Robert Mangum Aff.; Doc. No. 21-3 at ¶ 3: Thomas Schindler Aff.). Defendants Potter and Mangum instructed Plaintiff verbally on several occasions to remove the tissue paper, but Plaintiff refused to obey their commands. (Doc. No. 21-1 at ¶ 5; Doc. No. 21-2 at ¶¶ 3; 4; Doc. No. 21-8 at ¶ 4: William Baxter Aff.). Thereafter, Defendants Potter, Mangum, and Baxter entered Plaintiff's cell and

3

instructed Plaintiff to put his hands on the back wall. (Doc. No. 21-1 at ¶ 6; Doc. No. 21-2 at ¶ 5; Doc. No. 21-8 at ¶ 5). Plaintiff was also instructed to remove his hands from his jumpsuit. (Doc. No. 21-1 at ¶ 6; Doc. No. 21-2 at ¶ 5). Plaintiff refused the commands to remove his hands from his jumpsuit. (Doc. No. 21-1 at ¶ 6; Doc. No. 21-2 at ¶ 5). Plaintiff started moving to the back of the cell and he suddenly turned to his left (towards the officers) and he removed his left arm from the jumpsuit. (Doc. No. 21-1 at ¶ 7; Doc. No. 21-2 at ¶ 5). Officers Potter, Mangum, and Baxter attempted to secure Plaintiff and Plaintiff resisted. (Doc. No. 21-1 at ¶ 7; Doc. No. 21-2 at ¶ 6; Doc. No. 21-8 at ¶ 5). Defendant Baxter restrained Plaintiff's legs, Defendant Mangum was able to gain control of Plaintiff's left arm, and Defendant Potter assisted in gaining control of Plaintiff's right side. (Doc. No. 21-1 at ¶ 7; Doc. No. 21-2 at ¶ 6; Doc. No. 21-8 at ¶ 6). During this brief encounter, Plaintiff hit his head on the back wall of the cell. (Doc. No. 21-1 at ¶ 8; Doc. No. 21-2 at ¶ 7; Doc. No. 21-8 at ¶ 7).

Plaintiff was ultimately secured and the tissue paper was removed from the cell. (Doc. No. 21-1 at ¶ 9; Doc. No. 21-2 at ¶ 8; Doc. No. 21-8 at ¶ 8). The officers then exited the cell, Defendant Potter reported the incident to Defendant Schindler, and medical staff was called to Plaintiff's cell. (Doc. No. 21-1 at ¶ 14; Doc. No. 21-2 at ¶ 13; Doc. No. 21-8 at ¶ 13). Officers Potter, Mangum, and Baxter all assert in their affidavits that "at no time did anyone strike Mr. Duff in the back of the head or about his body with any object." (Doc. No. 21-1 at ¶ 11; Doc. No. 21-2 at ¶ 10; Doc. No. 21-8 at ¶ 10). All three of these Defendants also state, contrary to Plaintiff's allegations, that there "was no pool of blood in the cell when we left." (Doc. No. 21-1 at ¶ 13; Doc. No. 21-2 at ¶ 12; Doc. No. 21-8 at ¶ 12).

A nurse visited Plaintiff in his cell after the incident, and she cleaned the wound and closed it with Dermabond. (Doc. No. 21-3 at ¶¶ 7; 8; Doc. No. 21-3 at p. 3: Ex. A to Schindler

4

Aff.). Thereafter Plaintiff was seen by medical staff on March 15, 17, and 19. (Doc. No. 21-4 at pp. 3-13: Ex. A to Anthony Gould Aff.). On March 17 it was noted that he was already taking ibuprofen and he was directed to drink more water and do deep breathing exercises. (Id. at p. 8). On March 19 it was noted that Plaintiff was not able to reproduce the dizziness he was complaining about. (Id. at p. 9). On March 23, 2012, Plaintiff was transferred away from the Buncombe County Detention Center.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate the existence of specific, material facts giving rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th

Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

A. Plaintiff's Excessive Force Claim Against Defendants Potter, Mangum, and Baxter

Because Plaintiff was a pre-trial detainee when the alleged constitutional claims occurred, his claims are properly analyzed under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. First, as to Plaintiff's excessive force claim, on June 22, 2015, the Supreme Court held in Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a Fourteenth Amendment standard of objective reasonableness.[2] The Supreme Court in Kingsley set forth

---

[2] Before Kingsley, some circuits used the same analysis for pre-trial detainees as convicted prisoners in addressing excessive force claims, asking whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The Court in Kingsley held that, with regard to pre-trial detainees, the plaintiff must show only

6

several factors in assessing whether an officer's use of force was reasonable:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. (citing Graham v. Connor, 490 U.S. 386, 395, 396 (1989)). In assessing whether Defendants used excessive force, this Court must make that determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. Additionally, the Court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (alterations in original) (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547 (1979)). Finally, the Supreme Court has stated, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Here, the undisputed evidence on summary judgment shows that on March 13, 2012, Plaintiff put tissue paper over the window in his cell, in violation of jail policy. Defendants Potter and Mangum instructed Plaintiff verbally on several occasions to remove the tissue paper, but Plaintiff refused to obey their commands. Thereafter, Defendants Potter, Mangum, and

---

objective unreasonableness—thus, a showing of subjective intent is no longer required in an excessive force claim brought by a pre-trial detainee.

Baxter entered Plaintiff's cell and instructed Plaintiff to put his hands on the back wall. Plaintiff was also instructed to remove his hands from his jumpsuit. Plaintiff refused the commands to remove his hands from his jumpsuit. Plaintiff started moving toward the back of the cell and he suddenly turned to his left (towards the officers) and he removed his left arm from the jumpsuit. Defendant Baxter restrained Plaintiff's legs, Defendant Mangum was able to gain control of Plaintiff's left arm, and Defendant Potter assisted in gaining control of Plaintiff's right side. During this brief encounter, Plaintiff hit his head on the back wall of the cell. Defendants' evidence shows that at no time did anyone strike Plaintiff in the back of the head or about his body with any object. Plaintiff was ultimately secured and the tissue paper was removed from the cell. The officers then exited the cell, Defendant Potter reported the incident to Defendant Schindler, and medical staff was called to Plaintiff's cell. A nurse visited Plaintiff in his cell after the incident, and she cleaned the wound—a small laceration on his head—and closed it with Dermabond.

Given these undisputed facts, and considering the factors set forth in <u>Kingsley</u>, the Court finds that the force used was reasonable. Defendants' use of force was limited to retraining Plaintiff's arms and legs. Moreover, before the officers used force to restrain Plaintiff's arms and legs, they reasonably anticipated that Plaintiff could become dangerous because he began aggressively lunging towards them as they approached him in his cell. Moreover, it is undisputed that Plaintiff suffered only minimal injury, and he was injured from hitting his head on the wall of the cell, not from being hit by any of the Defendants. Defendants' evidence on summary judgment compels a finding that the officers' actions were reasonable under the circumstances. Thus, Plaintiff has not shown that Defendants violated his constitutional rights by use of excessive force.

In opposing Defendants' summary judgment, Plaintiff has presented only arguments in his opposing brief. He has not submitted any evidence such as sworn affidavits to rebut Defendants' evidence. See Rountree v. Fairfax Cnty. Sch. Bd., 933 F.2d 219, 223 (4th Cir. 1991) ("The arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, fail to meet the evidentiary standard necessary to create a genuine issue of material fact."). Plaintiff has, therefore, failed to raise a genuine dispute of material fact as to whether Defendants Potter, Mangum, and Baxter used excessive force against him.[3] Thus, Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

B. Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs Against Defendant Schindler

Fourteenth Amendment due process claims by pretrial detainees under 42 U.S.C. § 1983

---

[3] Defendants also note that Plaintiff did not answer their requests for admissions, in which they asked Plaintiff to admit, among other things, that Plaintiff refused the officers' commands to remove his hands from his jumpsuit and place his hands on the back wall of his cell, that he also cursed at the officers and moved aggressively towards them just before they took actions to get Plaintiff under control, that Plaintiff hit his head on the back wall of his cell during his brief altercation with the officers, that a nurse cleaned his wound and applied Dermabond after the incident, and that Defendants did not violate Plaintiff's constitutional rights. See (Doc. No. 21-5 at 3-4). Rule 36 of the Federal Rules of Civil Procedure states, in relevant part, that a matter is admitted unless within 30 days after service of the request, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection. See United States v. Renfrow, No. 5:07-cv-117-FL, 2009 WL 903202, at *3 (W.D.N.C. Jan. 26, 2009) (citing FED. R. CIV. P. 36(a)). Defendants contend that, based on Plaintiff's unanswered request for admissions, it is established that all of the officers acted appropriately and Plaintiff's constitutional rights were not violated. See Whiting v. Weslowski, 200 F.R.D. 263, 264-65 (E.D.N.C. 2000) (deeming the unanswered request for admissions admitted even though the plaintiff was pro se). Because the Court finds that Defendants are entitled to summary judgment based alone on the fact that Plaintiff has simply come forward with no admissible evidence on summary judgment to rebut Defendants' evidence, summary judgment will be granted to Defendants without regard to Plaintiff's unanswered requests for admissions.

based on an alleged lack of or inappropriate medical treatment are analyzed under the same standard as those brought by convicted prisoners under the Eighth Amendment's prohibition against cruel and unusual punishment.[4] Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994);

---

[4] The Supreme Court in Kingsley did not explicitly extend the objective reasonableness standard for excessive force claims to other claims brought by pretrial detainees, including deliberate indifference claims. Accord Brandt v. Raphael, Civ. No. 9:13-cv-533, 2016 WL 1572439, at *7 n.7 (N.D.N.Y. Mar. 25, 2016) ("As the decision in Kingsley deals only with excessive force claims, this Court continues to apply Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs . . . ."); Gilbert v. Rohana, 1:14-cv-00630-RLY, 2015 WL 6442289, at *4 (S.D. Ind. Oct. 23, 2015) (stating that "Kingsley did not alter the legal standard for denial of medical treatment claims brought by pretrial detainees like Plaintiff").

Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The Court finds that Plaintiff has not presented evidence on summary judgment to raise a genuine issue of material fact as to whether Defendant Schindler was deliberately indifferent to Plaintiff's serious medical needs. As noted, Defendants have presented evidence that a nurse examined Plaintiff after the incident, cleaned his wound, and applied Dermabond to close the wound. (Doc. No. 21-3). Plaintiff was again seen by additional medical staff on March 15, 17, and 19th. He was given ibuprofen and his complaint of having a possible concussion was not supported by the medical evidence. (Doc. No. 21-4 at 7; 8; 9). Furthermore, Plaintiff also complained about dizziness after the incident, but the dizziness could not be reproduced when Plaintiff was examined. Thus, contrary to Plaintiff's conclusory allegations that he was not treated for his injuries, the evidence on summary judgment shows that Plaintiff was seen on several occasions by the medical staff during his eleven-day stay in the Buncombe County Detention Center. In addition, there is no evidence that Defendant Schindler knew about and

11

ignored any serious medical need of Plaintiff.  To the contrary, Defendant Schindler states in his affidavit that after the incident he "immediately notified the medical staff for the jail and a nurse went to see Mr. Duff." (Doc. No. 21-3 at ¶¶ 6; 7: Thomas Schindler Aff.).  Schindler further states that "the nurse made the decision on how to treat Mr. Duff's cut" and that Schindler "never instructed the nurse or any other medical staff on how to treat Mr. Duff's injuries." (Id. at ¶ 8).

As with the excessive force claim, Plaintiff has presented no admissible evidence on summary judgment to rebut Defendants' evidence in support of the summary judgment motion on Plaintiff's deliberate indifference claim.  In sum, Plaintiff has not raised a genuine dispute of material fact on summary judgment as to whether Defendant Schindler (or any other Defendant) was deliberately indifferent to Plaintiff's serious medical needs.  Thus, Defendants are entitled to summary judgment as to this claim.

## IV. CONCLUSION

In sum, for the reasons stated herein, Defendants are entitled to summary judgment as to Plaintiff's claims for excessive force and deliberate indifference to serious medical needs.[5]

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 21), is **GRANTED,** and this action is dismissed with prejudice.  To this extent, Plaintiff's own Motion to Dismiss, (Doc. No. 28), is **DENIED**.

---

[5] Because the Court has determined that Defendants did not violate Plaintiff's constitutional rights in the first instance, the Court does not address Defendants' arguments in support of their qualified immunity defense.

2. The Clerk is directed to terminate this action.

*signature*

Frank D. Whitney
Chief United States District Judge